## J. M. LESTER *v.* T. C. WINFREY.

**Vendor and Purchaser—Land Devised Upon Condition—Title of Purchaser.**
    The evidence was held to show that the purchaser of land devised upon conditions imposed as to use and disposition of same, to-wit, for the benefit of testator's wife and children during her widowhood, or until the youngest child arrived at age, acquired a good title although the proceeding under which the sale was made was informal.

**Equity—Contract for Sale of Land—Time as Essence.**
    The doctrine that courts of equity will not ordinarily regard time as the essence of a contract for the sale of land, was held to apply to the case at bar.

**Time—Sale of Land Under Will.**
    The sale of land by an executor was held to be a substantial compliance with the terms of the will fixing the time of sale.

**Guardian and Ward—Confirmation of Sale.**
    A confirmation by the court of a sale of land by the guardian, prior to the death of the ward, precludes the ward's heirs from setting up claim to the land.

**Estoppel—Conveyance by Heirs.**
    Where adult heirs made deeds to their interest in land of the testator, and received the purchase price, they are estopped from setting up any claim to the land, either in their own right, or as heirs of the deceased sister.

APPEAL FROM CUMBERLAND CIRCUIT COURT.

December 20, 1872.

OPINION BY JUDGE PRYOR:

F. H. Winfrey died, leaving a last will and testament, and his widow with eleven children surviving. By the provisions of his will, Thomas C. Winfrey, who is the appellee in this case, was left his executor. He devised all his estate, consisting of land and slaves, to his wife to be used and worked for the benefit of herself and children during her widowhood or until the youngest child arrived at age and upon the happening of either event his estate, real and personal and mixed, to be sold and the proceeds to be divided between his children.

The appellant (the executor) purchased all the interest of the children of the devisor in the lands devised, except the interest of W. J. Winfrey, Kitty Winfrey, and two of the children of Bledsoe. The slaves devised were all set free and the widow, not being able to keep up the farm, desired to sell her interest and that of her daughter and invest the proceeds of sale in other lands.

The executor, in order to gratify the wishes of the widow, or to convert the interest he had bought into money, sold the tract of land by executory contract to the appellant.

This contract obligated Winfrey to the effect, that in a few days he would make to the appellant a good and sufficient deed for the land, the same to be signed by the widow and W. J. Winfrey as well as himself. The deed, it seems, was prepared and ready for delivery, but the appellant refused to receive it, insisting that the executor had no right to sell under the will, and that one of the children of the devisees and two of the grandchildren were under age. The appellee, who was a son of the devisor and executor of his will, having purchased all the interest of his brothers and sisters in the land who were of age, except W. J. Winfrey, and he, having united with him in the deed, was able to make a perfect title to the whole tract except the interest of Kitty Winfrey and the two Bledsoe children, all these of whom were infants. The evidence establishes the fact beyond controversy, that Lester knew of this defect in the title when he bought the land. Kitty's interest in the land was one-eleventh of the whole tract, and the interest of the Bledsoe children was two-sixths of one-eleventh. The appellant admits in his answer that the appellee told him that his title was good except as to one-eleventh and two-sixths of one-eleventh of the land sold him.

Winfrey, in order to perfect the title, had the guardian of these infants to file a petition for the sale of their interest, under the provisions of Chapter 86 of the Revised Statutes. The guardian seeks an investment of the proceeds of the sale belonging to Kitty in other land. The land was sold under this ex parte proceeding and Winfrey became the purchaser. The sale was confirmed by the court, and a deed made him by the commissioner. Between the date of the confirmation of the sale, and the deed to the commissioner, Kitty died. The proceeding under which the sale of the infants' property was made, although informal, is such a compliance with the statute as passes the title to the purchaser. Winfrey has paid the money into court and it is there held for reinvestment. Second Volume Revised Statutes, page 314; 3 Bush 384. His title to the whole tract was perfected before the appellant by the terms of the executory agreement was to get the possession. There is nothing in the record showing that the time for making the conveyance formed an essential part of the agreement. The general doctrine that courts of equity will not ordinarily regard time as the essence of a contract in the sale of land, applies to this case. *Magoffin v. Holt,* 1 Duvall 97, 3 Monroe 34.

If a good title can be made in a reasonable time the vendee will be compelled to accept it. *Craig v. Martin,* 3 J. J. Marshall 50.

There is no fraud or unfairness alleged, or charged, against the appellee in the sale of the land, but on the contrary the defects in the title were disclosed before the sale was made.

We see no reason why the title is not perfect unless the will of Winfrey precludes any sale from being made. The widow and children have all conveyed their interest in the land as before recited, except the interest of the one-eleventh and the two-sixths of one-eleventh. The executor, by the provisions of the will, was invested with the full power to sell this property when the youngest child arrived at age. The youngest child, Kitty, died and the children survivors were then all adults. The object of the devisor in postponing the sale until the period designated by the will was to enable the wife to hold and use the property until all the children were old enough to receive their distributable share, and in the meantime have them supported and maintained out of it. The executor has exercised his power to sell, not at the exact time prescribed by the will, but when the object of giving him such power is consid-

ered, he has done substantially what the will required him to do. Those who can object to the sale have already conveyed their interest, and although we are inclined to the opinion that the executor could sell as such, still the defect in the title, if any, is cured by the sale of the interests of the infants under the petition of their guardian. The confirmation of the sale to Winfrey by the court previous to the death of Kitty will preclude her heirs from setting up any claim to it.

The judgment of the court below is *affirmed*.

*Garnett, for appellant.*

*James, for appellee.*

---

### RESPONSE TO PETITION FOR RE-HEARING.

DELIVERED BY JUDGE PRYOR:

Counsel for appellant, in his petition for rehearing, is attempting by a labored argument to impress upon the minds of the court that Lester was imposed upon by the appellee and that the former knew nothing of the defect in the title and the interest of the infants in the land. The proceedings and proof show that Lester knew that the title was defective as to one-eleventh and two-sixths of one-eleventh of the whole tract. He took the land subject to these defects with the understanding that the appellee would proceed at once to make the title perfect. This the appellee did by filing his petition to have the interest of the infants sold.

It is a matter of doubt, however, whether the action on the part of the executor was necessary. He was invested with full power to sell that land. There was no restriction except as to time.

All of the children of the devisor were of full age except Kitty and two of his grandchildren. The land was in a delapidated condition, and the slaves all set free. The means of enabling the widow to farm successfully and maintain the infant children had been taken from her. There was nothing in the will prohibiting a sale of the property. The will construed as contended for by counsel on both sides converted the land into money, a question we do not decide, but if so, the title is in the executor and the heirs must look to him and not to the purchaser.

The adult heirs received their money and made deeds to their specific interests. Whether they had the title or not, the reception of the money and the execution of the deeds estopped them from setting up any claim to the land, either in their own right or as heirs of Kitty. It is not pretended that the adults had no power to dispose of their interest in the land or its proceeds.

If they had all been adults and capable of contracting they could have annulled the will. Kitty's heirs can assert no claim to this property. Her guardian has received the proceeds of the land for her, or it is held by the chancellor to be reinvested upon his application. If the land was converted into money by the will and the title in the executor why could not the guardian elect to take the money or the value of his ward's interest?

In order, however, to fully protect the purchaser and secure the rights of the infants, the chancellor is appealed to, who takes the money and holds it for the benefit of the ward.

The individual deed of Winfrey and his wife as well as a deed from him as executor is tendered into court, and appellant can withdraw one or both.

Appellant's title is made doubly secure. He has the individual deed of the grantor and his wife and his deed as executor. The sale and title to the infants' interest is approved and sanctioned by a court of equity. There is no one to complain of any defect in the proceeding if there was any and therefore the appellant should be content. There is no question made or none raised in regard to the rents and therefore no reversal can be had on that ground. If the appellant is entitled to rent, his remedy is by another action. We see no reason why he is not unless he has derived the benefits resulting from the use of the land.

Petition *overruled*.

*Garnett, for appellant.*

*James, for appellee.*